UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORLY TAITZ, | ) |
| | ) |
| Plaintiff, | ) Civil Action No.: 10-0151 (RCL) |
| | ) |
| v. | ) |
| | ) |
| BARACK HUSSEIN OBAMA, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S CORRECTED COMBINED MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND IN
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Barack H. Obama, respectfully provides this corrected combined memorandum of points and authorities in (1) support of his motion to dismiss this case, and (2) opposition to Plaintiff's motion for a preliminary injunction (R.8).  Plaintiff lacks standing to bring her claims, as has been thoroughly established by the several other federal courts in which she has litigated substantially similar claims.  For this reason alone, her case should be dismissed and her request for preliminary injunction denied.  As to her motion for a preliminary injunction, she seeks the recusal of the United States Attorney's Office for the District of Columbia from representing the President in this civil lawsuit as well as the release of a number of documents purportedly related to a vague series of allegations associated with her representations about the President's eligibility for office.  None of these requests have any merit.

**Background**

Although, to Defendant's knowledge, this is Dr. Taitz's first case in which she serves as Plaintiff, this is not her first bite at the apple, or even her second: she has unsuccessfully

represented plaintiffs in at least three judicial districts seeking to raise similar claims. In each of these cases, the United States district courts have declined to find jurisdiction and have denied relief similar to the ultimate relief sought here.

Dr. Taitz's Complaint suffers from exactly the same defects that doomed many of her previous litigation efforts. Simply put, her allegations about the President's citizenship are not a concrete and particularized injury, as required to establish standing under the "case or controversy" requirement of Article III, and the harms that she has suffered from judicial and/or bar sanctions for her conduct in litigation are the consequences of her own actions and not in any way traceable to any legal claim cognizable against Defendant.

Even if plaintiff had standing, however, her request for a preliminary injunction should nonetheless be denied. A preliminary injunction entered with respect the underlying issue would carry with it the potential of irreparable harm to the public interest, whereas Plaintiff has not provided any credible showing that she will be irreparably harmed if her application is denied.

Plaintiff's prior cases:

1.  **Cook v. Good**, --- F. Supp. 2d ---, No. 09-cv-82, 2009 WL 2163535 (M.D. Ga. July 16, 2009), attached hereto as Exhibit 1.

On July 9, 2009, United States Army Major Stefan Frederick Cook sought a temporary restraining order in the Middle District of Georgia to enjoin his pending overseas deployment to Afghanistan. See Civil Docket sheet, Cook v. Good, No. 09-cv-82, attached hereto as Exhibit 2. Represented by Dr. Taitz, Major Cook alleged that his orders were not valid and that his doubts about the President's citizenship would cause him to violate his oath to the United States Constitution if he were forced to deploy. See generally 2009 WL 2163535. After a hearing on

July 16, 2009, Judge Clay Land dismissed Major Cook's claims, finding that "Major Cook cannot satisfy" the standing prerequisite of Article III. Id. at *1. The district court also noted that Dr. Taitz had sought to salvage the action by "seek[ing] to amend the complaint to add two additional parties, Maj. Gen. Carol Dean Childers (Retired) and Lt. Col. David Earl Graef." Id. at *2. Judge Land rejected this proposed amendment, noting that the two officers had "alleged no concrete particularized injury," and that "[t]heir political claim does not give rise to a case or controversy to be heard in federal court." Id.

Still represented by Dr. Taitz, Major Cook appealed the dismissal to the Eleventh Circuit Court of Appeals, which dismissed the appeal "for want of prosecution" on November 24, 2009. See 11th Circuit Docket sheet, No. 09-14698-CC (noting pending motion to reinstate appeal), attached hereto as Exhibit 3.

2.  **Rhodes v. Gates**, 5:09-CV-00703-XR (W.D. Tex. 2009); and **Rhodes v. MacDonald**, 09-cv-106 (M.D. Ga. 2009).

Dr. Taitz returned to court in late August, 2009, representing a new plaintiff, Dr. Connie Rhodes, a United States Army Captain slated to deploy to Iraq in support of Operation Iraqi Freedom. Plaintiff and her client initially sought a temporary restraining order in the Western District of Texas, but the case was summarily dismissed as the district court quickly found their claims had "no substantial likelihood of success on the merits." Rhodes v. Gates, No. 09-00703-XR, Order Denying Mot. for TRO (W.D. Tex. Aug. 28, 2009). A copy of this order attached hereto as Exhibit 4.

Plaintiff then re-filed the same action in the Middle District of Georgia, the same court which had previously dismissed Cook v. Good. See Rhodes v. MacDonald, 2009 WL 2997605

3

at *1 (M.D. Ga. 2009), copies of the three Rhodes decisions are attached as Exhibit 5.  Plaintiff again sought a temporary restraining order to enjoin her client's overseas deployment.  Id.  Finding that there was "no credible evidence" and 'no reliable factual allegations to support [the] unsubstantiated, conclusory allegations and conjecture that President Obama is ineligible to serve as President of the United States," the Georgia district court again dismissed the complaint, deeming the claims "frivolous" and the "threatened injury . . . not substantial."  Id. at *3, *5.

In addition, the Georgia district court issued a stark warning to Dr. Taitz: "Plaintiff's counsel is hereby notified that the filing of any future actions in this Court, which are similarly frivolous, shall subject counsel to sanctions."  Id. at *1.

Responding with what the Georgia district court characterized as a "tirade," Plaintiff then moved for reconsideration of the district court's dismissal.  See Rhodes v. MacDonald, 2009 WL 3111834 at *1.  The district court noted that Plaintiff had "contemptuously ignore[d] the Court's previous admonition that Plaintiff's counsel discontinue her illegitimate use of the federal judiciary to further her political agenda."  Id.  Accordingly, in conjunction with its previous warning, the district court denied the reconsideration motion as "frivolous" and found that Dr. Taitz's conduct violated Rule 11 of the Federal Rules of Civil Procedure.  The district court ordered her to "show cause why the Court should not impose a monetary penalty of $10,000.00 upon Plaintiff's counsel for her misconduct."  Id. at *1, *3.

After Dr. Taitz withdrew as counsel for Major Rhodes, she continued to litigate the award of sanctions.  As the district court noted in its next order, however, "[i]nstead of responding to the Court's specific concerns or addressing the contemplated amount of the monetary sanction, Ms. Taitz continued her attacks on the Court," floating a number of implausible theories and

alleging bias on the part of the district court. Rhodes v. MacDonald, --- F. Supp. 2d ----, 2009 WL 3299817 (M.D. Ga. 2009) at *4. In response, the district court issued a detailed opinion documenting Dr. Taitz's misconduct, the frivolousness of her actions, and increasing the dollar amount of the contempt sanction to $20,000. Id.

Dr. Taitz has appealed these sanctions to the Eleventh Circuit Court of Appeals. See 11th Cir. Docket sheet, in Rhodes v. MacDonald, No. 09-15418BB, attached hereto as Exhibit 6. Her appeal has not yet been resolved.

3. **Barnett v. Obama**, No. 09-0082, 2009 WL 3861788 (C.D. Cal. Oct. 29, 2009).

Meanwhile, throughout the pendency of the above cases, Dr. Taitz maintained yet another action purportedly challenging the President's eligibility for office. In this case, a group of 44 plaintiffs comprising "third party candidates from the American Independent Party for president and vice president in the 2008 presidential election, inactive and active military personnel, and state representatives" brought an action in the Central District of California on January 20, 2009, shortly after the President's inauguration. See Barnett v. Obama, 2009 WL 3861788 at *1, *3. Similar to the instant case, the amended complaint in California "set[] forth ten questions for which they request[ed] declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, . . . all relat[ing] to the meaning of the Constitution's natural born citizen clause and the appropriate recourse should a sitting president not meet the 'natural born citizen' requirement." Id. The plaintiffs in Barnett also "request[ed] that the Court order the production of documents pursuant to FOIA." Id. As with Dr. Taitz's other cases, the district court dismissed plaintiffs' claims for lack of subject-matter jurisdiction. See Barnett at *3-8. Although the Barnett court identified one category of plaintiffs -- presidential candidates defeated by the President in the 2008 election

-- who might satisfy Article III's injury requirement, see Barnett at *8 (discussing the potential injury to failed presidential candidates), Dr. Taitz is not representing those plaintiffs in this action in the District of Columbia.

In its opinion, the California district court also discussed Dr. Taitz's litigation conduct, observing that she "has favored rhetoric . . . rather than the language of a lawyer seeking to present arguments through cogent legal reasoning," and that she took the "improper and unethical" step of "encourag[ing] her supporters to attempt to influence this Court's decision." See id. at *19.  In addition, the district court expressed its "deep[] concern[] that Taitz may have suborned perjury through witnesses she intended to bring." Id.  In contrast to the district court's characterization of Dr. Taitz's conduct, the same court noted that Gary Kreep, who served as separate counsel for two of the Barnett plaintiffs, had attempted "to bring serious issues before the Court." Id.

Following dismissal, the Barnett plaintiffs appealed to the Ninth Circuit Court of Appeals, which has not yet decided the appeal.  See 9th Cir. Docket sheet in Barnett v. Obama, No.10-55084, attached hereto as Exhibit 7.

## Argument

**I.      Plaintiff Lacks Standing.**

To the extent Plaintiff seeks to challenge the President's qualifications for office, she lacks standing to raise the issue. The question of standing is a threshold determination concerning "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975).  A plaintiff bears the burden of establishing proper standing "at the outset of its case." Sierra Club v. Environmental Protection

Agency, 292 F.3d 895, 901 (D.C. Cir. 2002).  In so doing, the plaintiff must allege facts sufficient to satisfy the "irreducible Constitutional minimum" of Article III standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Accordingly, to have standing here, Plaintiff must first allege that she "suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical[.]'"  Id. at 560 (citations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of."  Id. (quotations omitted).   "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Id. (quotations omitted).  In her Complaint, plaintiff has entirely failed to establish her standing to sue.

By now, it is well-established that the purported injury suffered by citizens who doubt the qualifications of the President is an injury to "the generalized interest of all citizens in Constitutional governance" which is too abstract to satisfy standing requirements.  See Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 217, 220 (1974); Berg v. Obama, 574 F. Supp. 2d 509, 518-21 (E.D. Pa. 2008), and cases cited therein; see also Barnett; Rhodes, 2009 WL 2997605; Rhodes, 2009 WL 3299817.  Having served as counsel in many of the prior cases establishing this principle, Plaintiff is well aware that an allegation of such injury is inadequate.  In this case, she now alleges that she herself has suffered a unique injury through having her theories of standing and subject matter jurisdiction rejected in those prior cases.  Even if this could constitute a tangible injury, it is neither causally related to the President's citizenship nor redressable by a favorable decision by this Court.  Therefore, the instant complaint must also be dismissed for lack of standing.

Plaintiff presents a rambling set of unsubstantiated conspiratorial allegations to support her claim that she has somehow been "injured" through her prior efforts to litigate the President's eligibility for office including, inter alia, that she suffered "vicious attacks coming from the media," that an "emissions hose" in her car "was disconnected," that certain private individuals "submitted [sic] perjured affidavits . . . and forged her signature," and that "her paypal account was tampered with." Complaint at 2-3. Of these, the only harm that conceivably stems from official action on the part of any governmental entity is her claim that "[w]hen she brought two legal actions in the Middle District of Georgia . . . she was sanctioned $20,000." Complaint at 3.

This injury is not traceable to any action of Defendant, but stems instead from her decisions to file, repeatedly, frivolous motions in district court in the Middle District of Georgia, even after being warned by that court.

This injury would not be redressed by the relief she seeks, because this Court cannot affect, through relief affecting Defendant, the sanctions issued by the Georgia court, nor the actions of the third parties allegedly responsible for her other injuries. Where injuries result only indirectly, "from the independent action of some third party not before the court," then "the presence of intervening factors interrupts the chain of traceability" and there is no standing. International Labor Rights Educ. & Research Fund v. Bush, 954 F.2d 745, 751 (D.C. Cir. 1992).

In her application for a preliminary injunction, Plaintiff raises the prospect of another type of harm: that her "law license" will be "undermine[d]" or "endanger[ed]." (Taitz Affidavit at 18-22.) She intimates that this threat is a collateral consequence of the decisions in Rhodes, claiming that the order from the Middle District of Georgia "was forwarded to the CA Bar." (Id. at 17.) Like the sanction from the Georgia district court, however, this injury is neither traceable

to Defendant's conduct nor redressable by an action of this Court.

Plaintiff cannot circumvent the requirement that she have standing merely by recasting her claims under the quo warranto statute, 16 D.C. Official Code § 3501, *et seq*. It is well-established that statutes conferring a right-to-sue may not extend that right to individuals who otherwise lack standing under Article III. See, e.g., McClure v. Reagan, 454 U.S. 1025 (1981) (affirming McClure v. Carter, 513 F. Supp. 265, 271 (D. Idaho 1981) (finding inadequate statutory authorization for Members of Congress to challenge the constitutionality of the appointment of another Member as an Article III judge). In certain circumstances, that provision permits an "interested person [to] apply to the court by certified petition for leave to have the writ issued. Without Article III standing, however, Dr. Taitz cannot maintain such a claim.[1]

Plaintiff cannot establish constitutional standing and her case should be dismissed in its entirety.

## II.     This Case Presents Only Non-Justiciable Political Questions.

It is well settled that when the United States Constitution makes a "textually demonstrable commitment" of an issue to another branch of the government, other than the judiciary, that issue presents a non-justiciable political question. See Baker v. Carr, 369 U.S. 186, 217 (1962). "The principle that the courts lack jurisdiction over political decisions that are by their nature committed to the political branches to the exclusion of the judiciary is as old as the fundamental principle of judicial review." Schneider v. Kissinger, 412 F.3d 190, 193 (D.C.

---

[1] There is ample reason to believe that the D.C. statute is entirely consistent with Article III because the definition of an "interested person" likely excludes those who have not suffered a cognizable injury-in-fact. See Columbian Cat Fanciers, Inc. v. Koehne, 96 F.2d 529, 532 (D.C. Cir. 1938) ("an action in quo warranto . . . must be brought by a person claiming title to the office in question and out of possession thereof.").

Cir. 2005). The political question doctrine serves to "restrain the Judiciary from inappropriate interference in the business of the other branches of Government" by prohibiting the courts from deciding issues that properly rest within the province of the political branches. United States v. Munoz-Flores, 495 U.S. 385, 394 (1990). Accordingly, claims "involving political questions outside of the Article III jurisdiction of federal courts are "consistently dismissed for want of subject matter jurisdiction." Zivotofsky v. Sec'y of State, 571 F.3d 1227, 1233 n.3 (D.C. Cir. 2009).

According to the text of the Constitution, the issues Plaintiff seeks to raise in this case regarding both whether President Obama is a "natural born citizen of the United States," and therefore qualified to be President, are to be judged (if at all), by other parts of the government than the judiciary.

At the outset, the Constitution indicates that issues related to a candidate's eligibility for the Office of President rest, in the first instance, with the voters and the Electoral College, the Constitutionally created body responsible for selecting the President of the United States. See U.S. Constitution, Article II, section 1, cl. 2 ("Each State shall appoint, in such Manner as the Legislature thereof may direct," electors for the President and Vice President); Amend. XXIII section 1; Williams v. Rhodes, 393 U.S. 23, 43 (1968) (Harlan, J., concurring) ("The [Electoral] College was created to permit the most knowledgeable members of the community to choose the executive of a nation."). The Constitution's commitment to the Electoral College of the responsibility to select the President necessarily includes the authority to decide whether a presidential candidate is qualified for office because the examination of a candidate's qualifications is an integral component of the electors' decision-making process.

The Constitution also provides that, after the Electoral College has voted, further review of a presidential candidate's eligibility for office, to the extent such review would ever be required, rests with Congress. Where no candidate receives a majority of the electoral votes, the Constitution commits to the House of Representatives the authority to select the President and, in so doing, to evaluate the candidates' qualifications. See U.S. Constitution Amendment XII. Similarly, the Twentieth Amendment exclusively grants Congress the responsibility for selecting a President when a candidate elected by the Electoral College does not satisfy the Constitution's eligibility requirements. See id. Amendment XX, § 3 ("the Congress may by law provide for the case wherein neither a President-elect nor a Vice President-elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified."). Thus, review of Presidential qualifications after the Electoral College has acted rests in Congress, pursuant to the Constitution.

Federal legislation further details the process for counting electoral votes in the Congress. Under 3 U.S.C. § 15, Congress is directed to be in session on the appropriate date to count the electoral votes for President, with the President of the Senate presiding. The statute further directs that the electoral votes be counted, and then the results be presented to the President of the Senate, who shall then "announce the state of the vote." The statute then provides a mechanism for objections to be registered and resolved in the following language:

> Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received. When all objections so made . . . shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the

>Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision.

3 U.S.C. § 15. The statute is clear that Congress adjudicates all challenges to the counting of Electoral votes for President.

In summary, the text of the Constitution and the relevant statutory law make plain that challenges to the qualifications of a candidate for President can, in the first instance, be presented to the voting public before the election, and, once the election is over, can be raised as objections as the Electoral votes are counted in the Congress. Therefore, challenges such as those purportedly raised in this case are committed to the electors, and to the Legislative branch.

Barack Obama has been President of the United States for over a year now. The issues which Plaintiff seeks to litigate in this case, and the allegations which she makes in her Complaint all relate to the fitness, competence, and qualification of President Obama to continue to serve in office. As the D.C. Circuit observed, under different circumstances, these issues are political questions for a very good reason:

>Although the primary reason for invoking the political question doctrine in our case is the textual commitment . . . to the Senate, the need for finality also demands it. See Baker v. Carr, 369 U.S. at 210, 82 S. Ct. at 706 . . . . [T]he intrusion of the courts would expose the political life of the country to months, or perhaps years, of chaos. Even if the courts qualified a finding of justiciability with a rule against stays or specific relief of any kind, their review would undermine the new President's legitimacy . . . for at least as long as the process took. And a declaratory action without final relief awarding the Office to one person or the other could confound matters indefinitely.

Nixon v. United States, 938 F.2d 239, 243 (D.C. Cir. 1991) (emphasis added), aff'd, 506 U.S.

224 (1992).[2]

Litigation of these issues in this Court would be an equal intrusion of the judiciary into the political life of the other branches of government. The intrusion would do violence to the principle of separation of powers, an equally-important basis to recognize that this political question is outside the jurisdiction of the Court. See Baker, 369 U.S. at 210 ("The non-justiciability of a political question is primarily a function of the separation of powers."); id. at 217 (setting forth the elements typically describing a political question).

In summary, the issues which Plaintiff seeks to litigate in this case are constitutionally and statutorily within the sole and exclusive jurisdiction of the Congress. Litigation of these issues in this Court at all, and certainly the granting of any of the relief sought by Plaintiff herein, would violate separation of powers. Accordingly, this case must be dismissed.

### III.  **Plaintiff Cannot Justify Mandamus Relief.**

Plaintiff seeks a writ of mandamus to compel the Secretary of State, Hillary Clinton, to produce the birth certificate supporting the President's application for a U.S. passport. Plaintiff cannot meet the high standards for mandamus relief. See, e.g., In re DRC, Inc., No. 09-5083, 2009 WL 5125602 (Dec. 8, 2009). In addition to failing to state a claim for any cause of action supporting production of records, Plaintiff cannot identify a non-discretionary duty violated by Defendant here that could possibly support mandamus.

---

[2] The same interest in finality has also long been recognized to limit the scope of actions in quo warranto. See Newman v. U.S. ex rel., Frizzell, 238 U.S. 537, 548 (1915) ("[G]eneral public interest is not sufficient to authorize a private citizen to institute such [Quo Warranto] proceedings, for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings, and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title.").

**IV.     Plaintiff Has No Entitlement to Defendant's Records.**

Plaintiff seeks the production of Defendant's birth certificate and various other records, but the simple problem with her claim is that she has no legal entitlement to them. For example, she has no basis to pursue a claim under the Freedom of Information Act, 5 U.S.C. § 552, because she has neither sued a federal agency nor produced any evidence of a request she made to a federal agency for such records (still less exhausting her administrative remedies). Other than her groundless claim for quo warranto relief, she has cited no other statute or common law right that would entitle her to production of any such records from Defendant. Her complaint therefore fails to state a claim upon which relief may be granted. See Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937 (2009).

**V.     Plaintiff is Not Entitled to a Preliminary Injunction.**

Even if the Court were to find that Plaintiff had standing, she would still not be entitled to injunctive relief. A grant of preliminary injunctive relief under Rule 65(a) "is considered an extraordinary remedy in this circuit." Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury, 193 F. Supp. 2d 6, 13 (D.D.C. 2001) (citations omitted). Because preliminary injunctive relief is such "a drastic and unusual judicial measure," see Marine Transp. Lines v. Lehman, 623 F. Supp. 330, 334 (D.D.C. 1985), the power to issue such an injunction must be "sparingly exercised," see Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

To prevail in her request for a preliminary injunction, Plaintiff bears the burden of demonstrating that: (1) there is a substantial likelihood of success on the merits; (2) failure to grant the injunction would result in irreparable injury; (3) the requested injunction would not substantially injure other interested parties; and (4) the public interest would be furthered by the

injunction. See Katz v. Georgetown Univ., 246 F.3d 685, 687-88 (D.C. Cir. 2001); Nat'l Head Start Ass'n v. Dep't of Health & Human Servs., 297 F. Supp. 2d 242, 246-47 (D.D.C. 2004). In a case such as this, where "the injunction sought would alter, rather than preserve, the status quo," Plaintiff must meet an even higher standard: she must demonstrate "a clear entitlement to relief" or that "extreme or very serious damage will result if the injunction does not issue." Qualls v. Rumsfeld, 357 F. Supp. 2d 274, 279 (D.D.C. 2005).

Here, Plaintiff seeks a preliminary injunction to (1) recuse the U.S. Attorney's Office from defending this suit, and (2) compel production of various "vital records" of Defendant. As explained above, she has no prospect of prevailing on the merits on her latter request. As for recusal of the U.S. Attorney's Office, her theory is pure speculation that the Office may bring a criminal prosecution against Defendant and that if that happened, it would suffer a conflict of interest in defending this suit. (R.8 at 9.) Cf. Younger v. Harris, 401 U.S. 37, 42 (1971) (plaintiffs lacked standing where they did not claim they had ever been threatened with prosecution, that a prosecution was likely, or even that a prosecution was remotely possible). Plaintiff offers no plausible support for her conspiracy theory or that it, if true, it would justify recusal of the Office, much less on an expedited basis on the current record.

More generally, because Plaintiff cannot show an injury to satisfy Article III standing, she cannot show irreparable harm for purposes of receiving an injunction. See, e.g., In re Navy Chaplaincy, 534 F.3d 756, 762-63 (D.C. Cir. 2008).

Moreover, her allegation of immediate injury falls well short of constituting a serious or irreversible harm. In her affidavit, Plaintiff claims: "I have a serious concern that a CA bar [sic] will be used as yet another tool in the same effort to destroy me," and that she is "supposed to

provide an answer to the CA bar by 02.26.10." (Taitz Affidavit R.8 ¶¶ 21-22.) Even if this were taken at face value, Plaintiff provides no specifics as to what her "answer" to the bar is required to include, what sort of inquiry is being performed by the Bar, or what additional stages of any bar inquiry may include.

The finality associated with Plaintiff's suggested date of February 26, 2010, is further undercut by the pendency of her appeals in <u>Barnett</u> and <u>Rhodes</u>. Those appeals are far more directly relevant to the (extremely tenuous) claims of harm she makes regarding her law license than anything likely to be resolved in this case. She has fallen far short of justifying preliminary relief, much less preliminary relief that would so significantly alter, rather than preserve, the status quo.

Finally, the request for preliminary injunction should be denied based on its adverse impact to the public interest. "[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982). Plaintiff cannot meet her burden of establishing that an injunction will serve the public interest in this case. The public has an interest in the finality of elections and avoiding disruption in the country's leadership. The storm of innuendo she seeks to create, if indulged, cannot but open the door to innumerable, equally frivolous claims. The Court should deny the preliminary injunction.

**Conclusion**

For the foregoing reasons, Defendant asks the Court to dismiss this case for lack of standing and deny Plaintiff's motion for a preliminary injunction.

March 1, 2010                                             Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney

 /s/
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

 /s/
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

**Certificate of Service**

I hereby certify that I caused a copy of the foregoing Defendant's Corrected Memorandum in Support of Motion to Dismiss and in Opposition to Motion for Preliminary Injunction to be served by first class mail addressed to pro se Plaintiff at:

>Orly Taitz
>29839 Santa Margarita Parkway, Suite 100
>Rancho Santa Margarita, CA 92688

and on

>Christopher-Earl Strunk
>593 Vanderbilt Ave., #281
>Brooklyn, NY 11238

on this 1st day of March 2010.

_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney