UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ ) | | |
| ORLY TAITZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 10-0151 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| BARACK HUSSEIN OBAMA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ ) | | |

## **DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant, Barack H. Obama, respectfully moves to dismiss Plaintiff's claims in her First Amended Complaint (R.16), pursuant to Rule 12(b)(1) and (6).  Like the claims in her original complaint, her current scattershot allegations center around her core claim that President Obama is ineligible for office.  Defendant moved to dismiss her original Complaint, but instead of opposing that motion, Plaintiff filed her First Amended Complaint.  As explained in the attached memorandum, her amended claims fare no better than those in her original complaint because she still lacks constitutional standing to bring them.  Her newly added claims also suffer various additional defects that totally bar their possible success.  Defendant respectfully requests dismissal of this case.

*Pro se* Plaintiff is advised that if she fails to respond to this motion, the Court may grant

this motion and dismiss his case because of the failure to respond. See Fox v. Strickland, 837

F.2d 507 (D.C. Cir. 1988).


March 31, 2010                              Respectfully submitted,

                                            *Ronald C. Machen Jr. /derb*
                                            RONALD C. MACHEN JR., D.C. Bar #447889
                                            United States Attorney

                                            *Rudolph Contreras /derb*
                                            RUDOLPH CONTRERAS, D.C. Bar # 434122
                                            Assistant United States Attorney

                                            /s/ *Alan Burch*
                                            ALAN BURCH, D.C. Bar # 470655
                                            Assistant United States Attorney
                                            555 4th St., N.W.
                                            Washington, D.C. 20530
                                            (202) 514-7204, alan.burch@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| ORLY TAITZ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 10-0151 (RCL) |
| | ) | |
| v. | ) | |
| | ) | |
| BARACK HUSSEIN OBAMA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT**

Defendant, Barack H. Obama, respectfully moves to dismiss Plaintiff's First Amended

Complaint (R.16), pursuant to Rule 12(b)(1) and (6).  As with Plaintiff's initial Complaint, the

claims in her First Amended Complaint must fail because she lacks constitutional standing to

bring them.  Her attempts to repackage her allegations do not change her core claim--that

President Obama is not eligible for office--and so her standing problem remains unchanged: she

suffers no individual and particularized harm traceable to her allegations about the President's

citizenship, much less any harm that is redressable by this Court.  Plaintiff has repeatedly sought

to litigate allegations surrounding President Obama's eligibility for office and is well aware of

the growing body of precedent holding that federal courts lack jurisdiction over her claims.

Moreover, her newly added claims suffer various additional defects that totally bar their possible

success.  Dismissal at the earliest possible stage remains appropriate.

**Background**

I.      **Plaintiff's Prior Challenges to President Obama's Eligibility for Office.**

Although, to Defendant's knowledge, this is Dr. Taitz's first case in which she appears as Plaintiff, this is not her first time arguing this issue, or even her second: she has unsuccessfully represented plaintiffs in at least three judicial districts seeking to raise similar claims.  In each of these cases, the United States district courts have declined to find jurisdiction and have denied relief similar to the ultimate relief sought here.

Dr. Taitz's claims here suffer from the same defects that doomed many of her previous litigation efforts.  Simply put, her allegations about the President's citizenship do not constitute a concrete and particularized injury, as required to establish standing under the "case or controversy" requirement of Article III, and the harms that she has suffered are the consequences of her own actions or third parties acting independently and are not in any way traceable to any legal claim cognizable against Defendant.

Plaintiff's prior cases:

1.      **Cook v. Good**, No. 09-cv-82, 2009 WL 2163535 (M.D. Ga. July 16, 2009), attached hereto as Exhibit 1.

On July 9, 2009, United States Army Major Stefan Frederick Cook sought a temporary restraining order in the Middle District of Georgia to enjoin his pending overseas deployment to Afghanistan.  See Civil Docket sheet, Cook v. Good, No. 09-cv-82, attached hereto as Exhibit 2. Represented by Dr. Taitz, Major Cook alleged that his orders were not valid and that his doubts about the President's citizenship would cause him to violate his oath to the United States Constitution if he were forced to deploy.  See generally 2009 WL 2163535.  After a hearing on

2

July 16, 2009, Judge Clay Land dismissed Major Cook's claims, finding that "Major Cook cannot satisfy" the standing prerequisite of Article III.  Id. at *1.  The district court also noted that Dr. Taitz had sought to salvage the action by "seek[ing] to amend the complaint to add two additional parties, Maj. Gen. Carol Dean Childers (Retired) and Lt. Col. David Earl Graef."  Id. at *2.  Judge Land rejected this proposed amendment, noting that the two officers had "alleged no concrete particularized injury," and that "[t]heir political claim does not give rise to a case or controversy to be heard in federal court."  Id.

Still represented by Dr. Taitz, Major Cook appealed the dismissal to the Eleventh Circuit Court of Appeals, which dismissed the appeal "for want of prosecution" on November 24, 2009. See 11th Circuit Docket sheet, No. 09-14698-CC (noting pending motion to reinstate appeal), attached hereto as Exhibit 3.

2. **Rhodes v. Gates**, 5:09-CV-00703-XR (W.D. Tex. 2009); and **Rhodes v. MacDonald**, 09-cv-106 (M.D. Ga. 2009).

Dr. Taitz returned to court in late August, 2009, representing a new plaintiff, Dr. Connie Rhodes, a United States Army Captain slated to deploy to Iraq in support of Operation Iraqi Freedom.  Plaintiff and her client initially sought a temporary restraining order in the Western District of Texas, but the case was summarily dismissed as the district court quickly found their claims had "no substantial likelihood of success on the merits."  Rhodes v. Gates, No. 09-00703-XR, Order Denying Mot. for TRO (W.D. Tex. Aug. 28, 2009).  A copy of this order attached hereto as Exhibit 4.

Plaintiff then re-filed the same action in the Middle District of Georgia, the same court which had previously dismissed Cook v. Good.  See Rhodes v. MacDonald, 2009 WL 2997605

at *1 (M.D. Ga. 2009), copies of the three <u>Rhodes</u> decisions are attached as Exhibit 5.  Plaintiff

again sought a temporary restraining order to enjoin her client's overseas deployment.  <u>Id.</u>

Finding that there was "no credible evidence" and 'no reliable factual allegations to support [the]

unsubstantiated, conclusory allegations and conjecture that President Obama is ineligible to

serve as President of the United States," the Georgia district court again dismissed the complaint,

deeming the claims "frivolous" and the "threatened injury . . . not substantial."  <u>Id.</u> at *3, *5.

In addition, the Georgia district court issued a stark warning to Dr. Taitz: "Plaintiff's

counsel is hereby notified that the filing of any future actions in this Court, which are similarly

frivolous, shall subject counsel to sanctions."  <u>Id.</u> at *1.

Responding with what the Georgia district court characterized as a "tirade," Plaintiff then

moved for reconsideration of the district court's dismissal.  <u>See</u> <u>Rhodes v. MacDonald</u>, 2009 WL

3111834 at *1.  The district court noted that Plaintiff had "contemptuously ignore[d] the Court's

previous admonition that Plaintiff's counsel discontinue her illegitimate use of the federal

judiciary to further her political agenda."  <u>Id.</u>  Accordingly, in conjunction with its previous

warning, the district court denied the reconsideration motion as "frivolous" and found that Dr.

Taitz's conduct violated Rule 11 of the Federal Rules of Civil Procedure.  The district court

ordered her to "show cause why the Court should not impose a monetary penalty of $10,000.00

upon Plaintiff's counsel for her misconduct."  <u>Id.</u> at *1, *3.

After Dr. Taitz withdrew as counsel for Major Rhodes, she continued to litigate the

award of sanctions.  As the district court noted in its next order, however, "[i]nstead of

responding to the Court's specific concerns or addressing the contemplated amount of the

monetary sanction, Ms. Taitz continued her attacks on the Court," floating a number of

4

implausible theories and alleging bias on the part of the district court. <u>Rhodes v. MacDonald</u>, 670 F. Supp. 2d 1363, 1369 (M.D. Ga. 2009). In response, the district court issued a detailed opinion documenting Dr. Taitz's misconduct, the frivolousness of her actions, and increasing the dollar amount of the contempt sanction to $20,000. <u>Id.</u> On appeal, the Eleventh Circuit Court of Appeals affirmed the sanctions. <u>See</u> <u>Rhodes v. MacDonald</u>, No. 09-15418, 2010 WL 892848 (11th Cir. Mar. 15, 2010).

       3.    **Barnett v. Obama**, No. 09-0082, 2009 WL 3861788 (C.D. Cal. Oct. 29, 2009).

       Meanwhile, throughout the pendency of the above cases, Dr. Taitz maintained yet another action purportedly challenging the President's eligibility for office. In this case, a group of 44 plaintiffs comprising "third party candidates from the American Independent Party for president and vice president in the 2008 presidential election, inactive and active military personnel, and state representatives" brought an action in the Central District of California on January 20, 2009, shortly after the President's inauguration. <u>See</u> <u>Barnett v. Obama</u>, 2009 WL 3861788 at *1, *3. Similar to the instant case, the amended complaint in California "set[] forth ten questions for which they request[ed] declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202, . . . all relat[ing] to the meaning of the Constitution's natural born citizen clause and the appropriate recourse should a sitting president not meet the 'natural born citizen' requirement." <u>Id.</u> The plaintiffs in <u>Barnett</u> also "request[ed] that the Court order the production of documents pursuant to FOIA." <u>Id.</u> As with Dr. Taitz's other cases, the district court dismissed plaintiffs' claims for lack of subject-matter jurisdiction. <u>See</u> <u>Barnett</u> at *3-8. Although the <u>Barnett</u> court identified one category of plaintiffs -- presidential candidates defeated by the President in the 2008 election -- who might satisfy Article III's injury

requirement, see Barnett at *8 (discussing the potential injury to failed presidential candidates),

Dr. Taitz is not representing those plaintiffs in this action in the District of Columbia.

In its opinion, the California district court also discussed Dr. Taitz's litigation conduct,

observing that she "has favored rhetoric . . . rather than the language of a lawyer seeking to

present arguments through cogent legal reasoning," and that she took the "improper and

unethical" step of "encourag[ing] her supporters to attempt to influence this Court's decision."

See id. at *19.  In addition, the district court expressed its "deep[] concern[] that Taitz may have

suborned perjury through witnesses she intended to bring."  Id.  In contrast to the district court's

characterization of Dr. Taitz's conduct, the same court noted that Gary Kreep, who served as

separate counsel for two of the Barnett plaintiffs, had attempted "to bring serious issues before

the Court."  Id.

Following dismissal, the Barnett plaintiffs appealed to the Ninth Circuit Court of

Appeals, which has not yet decided the appeal.  See 9th Cir. Docket sheet in Barnett v. Obama,

No.10-55084, attached hereto as Exhibit 6.

## II.    Plaintiff's Claims in this Case.

In Plaintiff's original Complaint here, her core claim was a "quo warranto" action

seeking to adjudicate President Obama's eligibility for office.  (R.1.)  She also claimed harm to

her law license and sought recusal of this Office--the U.S. Attorney's Office of the District of

Columbia--from defending this civil action.  She moved for a preliminary injunction.

On February 26, 2010, Defendant moved to dismiss the original Complaint, (R.10), and

opposed Plaintiff's motion for a preliminary injunction, (R.11).  Plaintiff filed a reply in support

of her motion for a preliminary injunction, (R.15), but did not oppose Defendant's initial motion

to dismiss.  (Her opposition was due March 15, 2010.)  Instead, Plaintiff filed her First Amended

Complaint on March 22, 2010.  (R.16.)[1]

Plaintiff's First Amended Complaint could generously be read to attempt to state several

causes of action:

1.    **Quo Warranto challenge to President Obama's eligibility for office**.  "[T]he

case revolves around the Federal Question of eligibility of the President under Quo Warranto[.]"

(R.1 at 1.)  She alleges that:

> Obama admitted to the fact that his father was never a US citizen, but rather a British
> citizen from a British colony of Kenya and based on British Nationality act respondent
> Obama was a British citizen at birth and a Kenyan citizen from age 2 on December 12,
> 1961 when Kenya became an independent nation.  As such, for the reason of his
> allegiance to foreign nations from birth respondent Obama never qualified as a Natural
> Born citizen.

(*Id*. at 10.)

2.    **Common Law Fraud**.  Plaintiff alleges that President Obama fraudulently uses a

Social Security number "issued in the state of CT to another individual, who was born in 1890."

(*Id*. at 13.)  She alleges harm from "over a year of intimidation, harassment, retaliation,

sanctions, ridicule, death threats" arising from her allegations about President Obama's

eligibility for office and her efforts to uncover the alleged fraud.  (*Id*. at 14.)

3.    **Qui Tam/False Claims Act**.  Plaintiff seeks to vindicate claims under the False

Claims Act, based on her allegation that "defendant has submitted within the District of

Columbia his false and wrongful claim for the payment of monies by the United States

---

[1] Plaintiff's recent filing of a purported "Motion to the Judicial Panel on Multidistrict
Litigation," so far docketed only in this Court, (R.17), "does not affect or suspend orders and
pretrial proceedings in the district court in which the action is pending and does not in any way
limit the pretrial jurisdiction" of this Court.  Fed. M.D.L. Panel R. 1.5; <u>see</u> 28 U.S.C. § 1407(f).

Government and the Department of the Treasury[.]" (*Id.* at 15.)  This apparently refers to

President Obama's salary as President, (*id.* ¶ 6), again based on alleged ineligibility for office,

(*id.* ¶ 5).

       4.      **Freedom of Information Act** ("FOIA").  Plaintiff alleges that she requested

"information from the Social Security administration seeking explanation, why the defendant is

using Social security numbers of other individuals and numbers that were never assigned and

what action is Social Security administration is taking to prosecute this conduct." (*Id.* at 16.)

She asserts that the Social Security Administration denied her FOIA "request due to privacy."

(*Id.*)  She seeks a writ of mandamus issued to the Commissioner of the Social Security

Administration.  (*Id.*)

       5.      **Interference with contract rights re Plaintiff's employment opportunities**.

Plaintiff alleges that she is licensed and practices as a dentist in California and that her practice

will be adversely affected by the recently enacted "Health Bill":

> Health bill, as being prepared and reconciled, will create an enormous machine of
> governmental bur[eau]cracy which will intrude into Plaintiff's practice, will affect her
> doctor-patient relations, will undermine her Hippocratic oath, will force her to ration
> medical care and de-facto deny medical care to elderly, whom some committees of
> bur[eau]crats will deem to be too old to receive such care, meaning too old to live.

(*Id.* at 18.)  As with Plaintiff's other claims, she alleges that "Defendant has never provided any

vital records to show that he is legitimate to hold position of the President and sign such bill into

law," and demands "a writ of Mandamus, seeking release of the Defendant's vital records . . . to

verify his legitimacy," as well as "declaratory relief deeming Health Bill HR 3590 and HR 3962

null and void[.]" (*Id.* ¶ 10.)  She also seeks damages for this under 42 U.S.C. §§ 1983 & 1985.

(*Id.* at 19-20.)

6.      **RICO claims**.  Plaintiff also seeks damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  Her RICO claims are based on the same alleged fraud connected to President Obama's eligibility for office.  (*Id*. at 20 ¶¶ 1-2.)  She adds to that several alleged acts of conspiracy, for example, the fact that the Hon. David O. Carter hired into his judicial chambers an attorney who had previously worked for a firm that had been "Obama's defense firm," and thereafter the judge "changed his opinion and decided that he no longer has jurisdiction to hear Barnett et al v Obama et al, which dealt with Obama's illegitimacy to presidency."  (*Id.* at 21 ¶ 5.)

## Argument

With the possible exception of Plaintiff's FOIA claim, each of her claims "revolves around the . . . eligibility of the President" for office.  (R.1 at 1.)  Accordingly, these latter claims are subject to dismissal for lack of standing, and as a non-justiciable political question, as explained below (and in Defendant's prior Motion to Dismiss).  Additionally, to the extent Plaintiff has attempted to raise claims based on FOIA, mandamus, the False Claims Act, and RICO, these theories suffer additional independent flaws that bar their success, should the Court find jurisdiction to reach them at all.

## I.      Plaintiff Lacks Standing.

To the extent Plaintiff seeks to challenge the President's qualifications for office, she lacks standing to raise the issue.  The question of standing is a threshold determination concerning "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  A plaintiff bears the burden of establishing proper standing "at the outset of its case."  Sierra Club v. Environmental Protection

<u>Agency</u>, 292 F.3d 895, 901 (D.C. Cir. 2002).  In so doing, the plaintiff must allege facts

sufficient to satisfy the "irreducible Constitutional minimum" of Article III standing.  <u>Lujan v.</u>

<u>Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  Accordingly, to have standing here, Plaintiff

must first allege that she "suffered an 'injury in fact' -- an invasion of a legally protected interest

which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or

'hypothetical[.]'" <u>Id.</u> at 560 (citations omitted).  "Second, there must be a causal connection

between the injury and the conduct complained of." <u>Id.</u> (quotations omitted).  "Third, it must be

likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." <u>Id.</u> (quotations omitted).  In her First Amended Complaint, Plaintiff has entirely

failed to establish any of the three necessary elements for standing.

By now, it is well-established that the purported injury suffered by citizens who doubt the

qualifications of the President is an injury to "the generalized interest of all citizens in

Constitutional governance" which is too abstract to satisfy standing requirements.  <u>See</u>

<u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208, 217, 220 (1974); <u>Berg v.</u>

<u>Obama</u>, 574 F. Supp. 2d 509, 518-21 (E.D. Pa. 2008), and cases cited therein; <u>see also</u> <u>Barnett</u>;

<u>Rhodes</u>, 2009 WL 2997605; <u>Rhodes</u>, 2009 WL 3299817.

Nor do her allegations related to the President's signing of the "Health bill," (R.16 at 18),

present any harms that are sufficient to confer standing.  As Plaintiff's pleading makes clear, her

challenge to this legislation depends on her claims regarding the President's eligibility for office,

for which her standing is unaffected by the passage of this legislation.  Nor are the harms she

asserts "actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560.  Plaintiff

has not identified any particular legislative provision that affects her practice as a dentist, and her

non-specific complaints about the law's effects on the practice of medicine as a whole likewise present only generalized grievances, rather than the concrete and particularized harms required to establish standing.  See <u>Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.</u>, 489 F.3d 1279 (D.C. Cir. 2007).

Although unique to her, Plaintiff's claims of emotional distress, (R.16 at 14 ¶ 12), fare no better in establishing an Article III injury.  See <u>Humane Society of U.S. v. Babbitt</u>, 46 F.3d 93, 98 (D.C. Cir. 1995) ("general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes").  Even if this could constitute a tangible injury, it is neither causally related to the President's citizenship nor redressable by a favorable decision by this Court.

Similarly unavailing are Plaintiff's other allegations of injury arising from her prior efforts to litigate the President's eligibility for office: that she suffered "vicious attacks coming from the media," that an "emissions hose" in her car "was disconnected," that certain private individuals "submitted perjured affidavits . . . and forged her signature," and that "her paypal account was tampered with."  (R.16 at 3.)  The only harm that conceivably stems from official action on the part of any governmental entity is her claim that "[w]hen she brought two legal actions in the Middle District of Georgia . . . she was sanctioned $20,000." (*Id.*)  This injury is not traceable to any action of Defendant, but stems instead from her decisions to file, repeatedly, frivolous motions in district court in the Middle District of Georgia, even after being warned by that court.

These injuries would not be redressed by the relief she seeks, because this Court cannot affect, through relief affecting Defendant, the sanctions issued by the Georgia court, nor the

actions of the third parties allegedly responsible for her other injuries.  Where injuries result only indirectly, "from the independent action of some third party not before the court," then "the presence of intervening factors interrupts the chain of traceability" and there is no standing.  See, e.g., Center for Biological Diversity v. Dep't of Interior, 563 F.3d 466, 478 (D.C. Cir. 2009); Miami Bldg. & Const. Trades Council, AFL/CIO v. Secr'y of Defense, 493 F.3d 201, 205-06 (D.C. Cir. 2007); International Labor Rights Educ. & Research Fund v. Bush, 954 F.2d 745, 751 (D.C. Cir. 1992).

In her application for a preliminary injunction, Plaintiff raises the prospect of another type of harm: that her "law license" will be "undermine[d]" or "endanger[ed]."  (Taitz Affidavit at  18-22.)  She intimates that this threat is a collateral consequence of the decisions in Rhodes, claiming that the order from the Middle District of Georgia "was forwarded to the CA Bar."  (Id. at 17.)  Like the sanction from the Georgia district court, however, this injury is neither traceable to Defendant's conduct nor redressable by an action of this Court.

Plaintiff cannot circumvent the requirement that she have standing merely by recasting her claims under the quo warranto statute, 16 D.C. Official Code § 3501, et seq.  It is well-established that statutes conferring a right-to-sue may not extend that right to individuals who otherwise lack standing under Article III.  See, e.g., McClure v. Reagan, 454 U.S. 1025 (1981) (affirming McClure v. Carter, 513 F. Supp. 265, 271 (D. Idaho 1981) (finding inadequate statutory authorization for Members of Congress to challenge the constitutionality of the appointment of another Member as an Article III judge)).  In certain circumstances, the quo warranto provision permits an "interested person [to] apply to the court by certified petition for leave to have the writ issued.  Without Article III standing, however, Dr. Taitz cannot maintain

12

such a claim.[2]

Because, Plaintiff cannot establish constitutional standing to challenge President Obama's eligibility for office, all her non-FOIA claims should be dismissed for lack of jurisdiction.

## II.    This Case Presents Only Non-Justiciable Political Questions.

Even if Plaintiff could satisfy the "case or controversy" requirement for Article III standing, her non-FOIA claims would still fail because they present a non-justiciable political question.  It is well settled that when the United States Constitution makes a "textually demonstrable commitment" of an issue to another branch of the government, other than the judiciary, that issue presents a non-justiciable political question.  See Baker v. Carr, 369 U.S. 186, 217 (1962).  "The principle that the courts lack jurisdiction over political decisions that are by their nature committed to the political branches to the exclusion of the judiciary is as old as the fundamental principle of judicial review."  Schneider v. Kissinger, 412 F.3d 190, 193 (D.C. Cir. 2005).  The political question doctrine serves to "restrain the Judiciary from inappropriate interference in the business of the other branches of Government" by prohibiting the courts from deciding issues that properly rest within the province of the political branches.  United States v. Munoz-Flores, 495 U.S. 385, 394 (1990).  Accordingly, claims "involving political questions outside of the Article III jurisdiction of federal courts are "consistently dismissed for want of subject matter jurisdiction."  Zivotofsky v. Sec'y of State, 571 F.3d 1227, 1233 n.3 (D.C. Cir.

---

[2] The D.C. statute appears entirely consistent with Article III because the definition of an "interested person" likely excludes those who have not suffered a cognizable injury-in-fact.  See Columbian Cat Fanciers, Inc. v. Koehne, 96 F.2d 529, 532 (D.C. Cir. 1938) ("an action in quo warranto . . . must be brought by a person claiming title to the office in question and out of possession thereof.").

2009).

According to the text of the Constitution, the issues Plaintiff seeks to raise in this case regarding both whether President Obama is a "natural born citizen of the United States," and therefore qualified to be President, are to be judged (if at all), by other parts of the government than the judiciary.

At the outset, the Constitution indicates that issues related to a candidate's eligibility for the Office of President rest, in the first instance, with the voters and the Electoral College, the Constitutionally created body responsible for selecting the President of the United States.  See U.S. Constitution, Article II, section 1, cl. 2 ("Each State shall appoint, in such Manner as the Legislature thereof may direct," electors for the President and Vice President); Amend. XXIII section 1; Williams v. Rhodes, 393 U.S. 23, 43 (1968) (Harlan, J., concurring) ("The [Electoral] College was created to permit the most knowledgeable members of the community to choose the executive of a nation.").   The Constitution's commitment to the Electoral College of the responsibility to select the President necessarily includes the authority to decide whether a presidential candidate is qualified for office because the examination of a candidate's qualifications is an integral component of the electors' decision-making process.

The Constitution also provides that, after the Electoral College has voted, further review of a presidential candidate's eligibility for office, to the extent such review would ever be required, rests with Congress.  Where no candidate receives a majority of the electoral votes, the Constitution commits to the House of Representatives the authority to select the President and, in so doing, to evaluate the candidates' qualifications.  See U.S. Constitution Amendment XII. Similarly, the Twentieth Amendment exclusively grants Congress the responsibility for selecting

14

a President when a candidate elected by the Electoral College does not satisfy the Constitution's eligibility requirements.  See id. Amendment XX, § 3 ("the Congress may by law provide for the case wherein neither a President-elect nor a Vice President-elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified.").  Thus, review of Presidential qualifications after the Electoral College has acted rests in Congress, pursuant to the Constitution.

Federal legislation further details the process for counting electoral votes in the Congress.  Under 3 U.S.C. § 15, Congress is directed to be in session on the appropriate date to count the electoral votes for President, with the President of the Senate presiding.  The statute further directs that the electoral votes be counted, and then the results be presented to the President of the Senate, who shall then "announce the state of the vote."  The statute then provides a mechanism for objections to be registered and resolved in the following language:

> Every objection shall be made in writing, and shall state clearly and concisely, and without argument, the ground thereof, and shall be signed by at least one Senator and one Member of the House of Representatives before the same shall be received.  When all objections so made . . . shall have been received and read, the Senate shall thereupon withdraw, and such objections shall be submitted to the Senate for its decision; and the Speaker of the House of Representatives shall, in like manner, submit such objections to the House of Representatives for its decision.

3 U.S.C. § 15.  The statute is clear that Congress adjudicates all challenges to the counting of Electoral votes for President.

In summary, the text of the Constitution and the relevant statutory law make plain that challenges to the qualifications of a candidate for President can, in the first instance, be presented to the voting public before the election, and, once the election is over, can be raised as

objections as the Electoral votes are counted in the Congress.  Therefore, challenges such as

those purportedly raised in this case are committed to the electors, and to the Legislative branch.

Barack Obama has been President of the United States for over a year now.  The issues

which Plaintiff seeks to litigate in this case, and the allegations which she makes in her First

Amended Complaint all relate to the fitness, competence, and qualification of President Obama

to continue to serve in office.  As the D.C. Circuit observed, under different circumstances, these

issues are political questions for a very good reason:

> Although the primary reason for invoking the political question doctrine in our
> case is the textual commitment . . . to the Senate, the need for finality also
> demands it.  See Baker v. Carr, 369 U.S. at 210, 82 S. Ct. at 706 .  . . .  [T]he
> intrusion of the courts would expose the political life of the country to months, or
> perhaps years, of chaos.  Even if the courts qualified a finding of justiciability
> with a rule against stays or specific relief of any kind, their review would
> undermine the new President's legitimacy . . . for at least as long as the process
> took.  And a declaratory action without final relief awarding the Office to one
> person or the other could confound matters indefinitely.

Nixon v. United States, 938 F.2d 239, 243 (D.C. Cir. 1991) (emphasis added), aff'd, 506 U.S.

224 (1992).[3]

Litigation of these issues in this Court would be an equal intrusion of the judiciary into

the political life of the other branches of government.  The intrusion would do violence to the

principle of separation of powers, an equally-important basis to recognize that this political

question is outside the jurisdiction of the Court.  See Baker, 369 U.S. at 210 ("The non-

---

[3] The same interest in finality has also long been recognized to limit the scope of actions in quo
warranto.  See Newman v. U.S. ex rel. Frizzell, 238 U.S. 537, 548 (1915) ("[G]eneral public
interest is not sufficient to authorize a private citizen to institute such [Quo Warranto]
proceedings, for if it was, then every citizen and every taxpayer would have the same interest
and the same right to institute such proceedings, and a public officer might, from the beginning
to the end of his term, be harassed with proceedings to try his title.").

justiciability of a political question is primarily a function of the separation of powers."); id. at 217 (setting forth the elements typically describing a political question).

In summary, the issues which Plaintiff seeks to litigate in this case are constitutionally and statutorily within the sole and exclusive jurisdiction of the Congress.  Litigation of these issues in this Court at all, and certainly the granting of any of the relief sought by Plaintiff herein, would violate separation of powers.  Accordingly, this case must be dismissed.

## III.    Plaintiff Fails to State a Claim Under FOIA.

Plaintiff seeks relief under FOIA, but her claim fails for any of several independent reasons.  First, she has not sued the correct party because President Obama is not a federal agency within the meaning of FOIA, and he is the only named defendant in this action.  See, e.g., Nat'l Security Archive v. Archivist of the United States, 909 F.2d 541, 545 (D.C. Cir. 1990).

Further, Plaintiff cannot obtain a writ of mandamus to the commissioner of the Social Security Administration because she cannot fulfill the strict legal requirements for the writ, which include, among other things, the violation of a non-discretionary legal duty.  See, e.g., In re DRC, Inc., No. 09-5083, 2009 WL 5125602 (D.C. Cir. Dec. 8, 2009); Strunk v. U.S. Dep't of State, --- F. Supp. 2d ---, 2010 WL 931197 (D.D.C. 2010) ("The exclusive nature of the FOIA precludes mandamus relief.") (citations omitted).

Also, it does not appear that Plaintiff exhausted her administrative remedies because (reading her papers in the light most favorable to her), she only recently filed an administrative appeal with the Social Security Administration, (R.16 at 127-28, appeal letter dated "03.15.10."), and the statutory time for the agency's response, see 5 U.S.C. § 552(a)(6)(A)(ii) (twenty business days for consideration of administrative appeal), had not yet run as the of the date she filed her

First Amended Complaint.  Because the Court is to assess exhaustion of administrative remedies as of the date of the filing of the operative complaint, Plaintiff cannot cure her premature filing by simply waiting the additional time in court.  See, e.g., Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 64 (D.C. Cir. 1990) ("once the agency responds to the FOIA request, the requester must exhaust his administrative remedies before seeking judicial review.").  For any of these reasons, Plaintiff's FOIA claims should be dismissed for failure to state a claim under Rule 12(b)(6).

## IV.   Additional Defects in Plaintiff's Claims.

Additionally, Plaintiff's claims suffer various other fatal flaws.  Her RICO conspiracy claims and her claims for civil rights violation under Sections 1983 and 1985 claim fail to describe actions by Defendant himself, much less actions that plausibly support a sufficient factual basis for either claim to be actionable.  See Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937 (2009).

Her False Claims Act claims suffer several fatal procedural defects.  Notably, under 31 U.S.C. § 3730(b), qui tam complaints must be filed on behalf of the United States, under seal, and *not* served on the defendant.  Plaintiff has violated each of these provisions and dismissal is appropriate for any one of these defects.  See, e.g., Nattah v. Bush, 541 F. Supp. 2d 223, 239 (D.D.C. 2008); United States ex rel. Foster v. Savannah Communication, 140 Fed. Appx. 905, 2005 WL 1719221 (11th Cir. July 25, 2005) (affirming dismissal of qui tam action for failure to file the complaint under seal or comply with any of the other procedural filing requirements). See also United States ex rel. Pilon v. Martin Marietta Corp., 60 F.3d 995 (2d Cir. 1995) (complaint must be dismissed with prejudice because the relator did not file the complaint under seal and then spoke to the press about the case).

18

Finally, her claims against John Does 1-100 should be dismissed because she has made

no discernable attempt to describe or differentiate their roles or actions, and thus has failed to

describe any particular actions by any of them.  Indeed, Plaintiff makes no mention of these John

Does beyond the caption of her First Amended Complaint.  This fails to state a claim, per Iqbal,

and also fails to present a short statement of claims per Rule 8 against any of them.  As discussed

in this Court's opinion in Nattah, her use of "John Doe" pleading is not simply a matter of

confusing one party for another, 541 F. Supp. 2d at 240-41, but is instead a transparent effort to

use discovery to manufacture a new set of as-yet undefined claims.  This is improper.

### Conclusion

For the foregoing reasons, Defendant asks the Court to dismiss this case for lack of

standing and, with respect to her FOIA claims, for failure to state a claim.

March 31, 2010                                    Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

19

**Certificate of Service**

I hereby certify that I caused a copy of the foregoing Defendant's Motion to Dismiss First Amended Complaint to be served on pro se Plaintiff via the Court's ECF system, and by first class mail addressed to:

> Christopher-Earl Strunk
> 593 Vanderbilt Ave., #281
> Brooklyn, NY 11238

on this 31st day of March 2010.

ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney